**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| SAMUEL LEWIS TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:17-CV-231-SPM |
| ) | |
| DAVID NULL, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

On September 2, 2021, this matter came before the Court for a final pretrial conference. At the conference, the Court noted that, in his trial brief, Plaintiff Samuel Taylor argued that Defendants had abandoned their exhaustion of administrative remedies affirmative defense and should not be permitted to pursue that issue at trial. The Court noted that although Defendants failed to make any response to that argument, it was far from clear that there was legal support for Plaintiff's position. Defense counsel indicated that Defendants did not intend to abandon or otherwise waive the defense and, for the reasons stated on the record at the final pretrial conference, the Court found that the trial would need to be delayed so that a hearing out of the presence of the jury could be held on the exhaustion issue.

On September 7, 2021, the parties appeared for an evidentiary hearing on Defendants' exhaustion defense. In support of their position, Defendants presented the testimony of Jennifer Price, an Assistant Warden at the Missouri Department of Correction, Potosi Correctional Center. Defendants also offered as evidence the Offender Grievance Policy applicable to the facility during the relevant period (Deft. Exh. A) and Plaintiff's Grievance Packet (Deft. Exh. B). Plaintiff testified on his own behalf and stated under oath that he did exhaust his administrative remedies

and presented documentary evidence to support his testimony. (Pltf. Exhs. 1-4). I have carefully considered the evidence presented at the hearing, the credibility of the witnesses, the applicable law, and the arguments of counsel. For the reasons set forth below, I find that Plaintiff has exhausted his administrative remedies as to his use of force claim before the Court.

I. DISCUSSION

The Prison Litigation Reform Act of 1996 ("PLRA") requires that a complainant exhaust administrative remedies before bringing suit under section 1983. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted.") "There is no question that exhaustion is mandatory under [§ 1997e(a)] and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). However, failure to exhaust remedies under the PLRA is an affirmative defense that the defendant must plead and prove." *Id.* at 204, 216. If an individual "has filed some grievance documents but has not followed all policies of the prison's administrative grievance process, the court must dismiss" the claim. *Human v. Hurley*, No. 2:17-cv-008 ERW, 2018 U.S. Dist. LEXIS 51649, at *9 (E.D. Mo. Mar. 28, 2018) (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)).

"Although the Eighth Circuit has not addressed the issue of whether the court or a jury should decide questions of material fact concerning compliance with the duty to exhaust, other circuits have held that such questions should be decided by the court." *Covington v. Stucky-Parchmon*, No. 4:18-cv-01667 AGF, 2019 U.S. Dist. LEXIS 222872, at *23 (E.D. Mo. Dec. 31, 2019) (citing *Small v. Camden Cty.*, 728 F.3d 265, 273 (3d. Cir. 2013)). In all, the Second, Third, Fifth, Seventh, Ninth, and Eleventh Circuits have held that courts "may resolve factual disputes relevant to the exhaustion issue without the participation of the jury." *Small*, 728 F.3d at 271. *See Messa v. Goord*, 652 F.3d 305, 308-09 (2d. Cir. 2011); *Dillon v. Rogers*, 596 F.3d 260, 272 (5th

Cir. 2010); *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2010); *Bryant v. Rich*, 530 F.3d 1368, 1373-77 (11th Cir. 2008); *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). Similarly, the Eighth Circuit has previously remanded a case for judicial determination on the issue of administrative exhaustion. *Benjamin v. Ward Cty.*, 632 F. App'x 301, 301-02 (8th Cir. 2016) (unpublished per curiam). As in *Covington*, this Court considers exhaustion a question of law to be determined by a judge upon examination of testimony and documentary evidence.

The PLRA's exhaustion requirement hinges on the availability of administrative remedies, and an individual need not exhaust remedies that are unavailable. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). As such, defendants' burden includes showing that administrative remedies were available to the plaintiff. *See Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001). In this case, there was no dispute between the parties that, during the relevant period, Taylor was an inmate at Potosi Correctional Center ("PCC") and PCC had a grievance procedure that had to be exhausted before Taylor could file suit.

### A. PCC'S THREE-STEP GRIEVANCE PROCEDURE.

The evidence presented established that, to exhaust administrative remedies under PCC's procedure, an individual was required to submit and receive responses to each of the following sequential steps: (i) the Informal Resolution Request ("IRR"); (ii) the Grievance; and (iii) the Grievance Appeal. *Id.* at 22. *See* Deft. Ex. A, Doc. 73-1 (Missouri Department of Corrections, Department Manual, D5-3.2 Offender Grievance). The grievance procedure set out specific response times from the receipt of each step (40 days each for the IRR and Grievance, 100 days for Grievance Appeal), and explained that "[e]xpiration of the response time limit at any stage of the process shall allow the grievant to move to the next stage of the process by notifying the grievance officers as specified in the standard operating procedure." *Id.* The procedure also

specified that "[t]he grievance officer will enter the offender response as exceeded time frame in the offender grievance tracking system."

### B. Taylor Satisfied Step One Of the Grievance Procedure.

There appears to be no dispute that Taylor complied with the first step of the grievance procedure. The evidence established that an Informal Resolution Request ("IRR") is the first attempt to resolve a complaint through discussion between the individual filing the IRR and the appropriate staff. According to Section III (K) of the MDOC Grievance Procedure, an IRR must be filed within 15 days of the alleged incident by requesting a form from the staff member responsible for processing IRRs. After the IRR is filed, the staff member reviews the complaint for procedural compliance, attempts to discuss the issue with the complainant, documents the results of the discussion and action taken to resolve the complaint (including documenting whether the complainant refused to discuss the issue), then the complainant reviews the summary of the discussion as documented, and indicates their response by marking the IRR form with "resolved" or "unresolved." The IRR form is then signed and dated by the complainant and the staff member, and staff member must enter the discussion date in the offender grievance tracking system ("the system"). If the complaint is resolved by discussion, the staff members records the resolution or non-resolution of the issue in the system.

The IRR should be responded to within 40 calendar days of receipt. If the issue is not resolved by discussion, the staff member will investigate the complaint, develop a proposed response, and send their proposed response for the approval of both a functional unit manager (or designee) and the associate superintendent (or designee), entering the "to reviewer" date in the system. If the proposed response is approved, it must be signed by three people: the staff member as the investigator, the functional unit manager as respondent, and the associate superintendent as

the reviewer. The staff member will enter the "from reviewer" date in the system, together with the date, action, outcome, and outcome date. The complainant must review the findings and recommendations of the IRR in the presence of the staff member, indicate their response by marking either "satisfactory" or "unsatisfactory" on the IRR form, as well as sign and date the form. If the complainant refuses to sign the form, the staff member must notate their refusal in the signature line of the IRR, and the IRR will be considered abandoned. The staff member must provide a copy of the IRR form to the complainant, enter the complainant's response and date in the system, and provide a grievance form if the complainant marked "unsatisfactory." Once the IRR process is complete, the original IRR form and all investigative materials will be maintained in the individual IRR file.

The testimony of Ms. Price, Mr. Taylor, and documents introduced by both parties clearly demonstrate that Taylor timely requested an IRR, the appropriate individuals at the facility reviewed the request and responded, and Taylor timely noted that the response was unsatisfactory, thereby triggering Taylor's right to move on to the second state of the grievance procedure. *See* Deft. Exh. B and Pltf. Exh. 1.

### C. THE EVIDENCE DEMONSTRATED TAYLOR COMPLIED WITH STEP TWO OF THE GRIEVANCE PROCEDURE.

The evidence established that, at step two of the grievance procedure, a complainant will receive a grievance form from a designated staff member if they indicate they are unsatisfied with the result of the IRR. The staff member providing the form will fill out the complaint number on the form, and the complainant must return the original form to the designated staff member to submit to the grievance officer. A grievance is considered abandoned if it is not filed within 7 calendar days after the complainant receives a response to their IRR unless the time limit is

suspended pursuant to a court order. Once received, the date of receipt will be entered into the system.

Within 10 calendar days of receiving the form, the grievance officer must prepare a grievance file containing the original IRR form and all documents pertinent to the grievance, forward the grievance form to the appropriate staff for response, and determine whether the complaint is related to the Americans with Disabilities Act ("ADA") to consult with an ADA site coordinator if necessary. Then, the grievance officer must prepare a proposed response, using the Recommended Superintendent's Response format, and submit it to the superintendent (or designee) with all investigative materials, entering the "to reviewer" date in the system.

The superintendent must approve, modify, or disapprove the proposed response within 40 calendar days of receipt, finalize the response to the complainant, then sign the form. The grievance officer will enter the "from reviewer" date in the system, together with the date, action, outcome, and outcome date. The complainant must review the response to the grievance in the presence of the grievance office staff member (or designee) and indicate their response by marking "accept" or "appeal" on the grievance form, as well as sign and date the form. If the complainant refuses to sign the form, the grievance officer must notate their refusal in the signature section of the grievance form and the grievance will be considered abandoned. The grievance officer must provide a copy of the grievance and attachments to the complainant. The grievance officer will enter the response and date in the system and provide an appeal form if the complainant marked "appeal." Once the grievance process is complete, the original grievance form and all investigative materials should be maintained in the individual grievance file.

At the evidentiary hearing, Ms. Price testified on direct examination that Mr. Taylor was provided with a grievance form after indicating the response to the IRR was "unsatisfactory", but

Taylor later refused to sign or return the original grievance form to the staff. Price also testified that because of Taylor's refusal to sign or return the original form to staff, Taylor's grievance file did not contain a copy of the original grievance form issued to Taylor and Taylor's grievance was deemed abandoned. This testimony, which Ms. Price admitted was not based on personal knowledge, was not supported by the evidence and, if true, was inconsistent with the facility's applicable grievance procedures.

The testimonial and documentary evidence presented at the hearing clearly demonstrated the following: Taylor was issued an offender grievance form; Taylor filled out the form on or about July 18, 2012 and submitted supporting affidavits (which were contained in the facility's files) together with the grievance form; on the face of the grievance form Taylor expressed doubt that the grievance would be resolved favorably and requested that the facility "Continue this complaint to the next stage of the grievance procedure"; the facility acknowledged receipt of Taylor's grievance by entering a grievance receipt date of July 31, 2012 into the facility's offender complaint database; consistent with the grievance procedures, Taylor's grievance was sent to the superintendent for review on October 3, 2012, and that date was entered into the offender complaint database; consistent with the grievance procedures, a proposed response denying the grievance was prepared, approved, and ultimately sent back to the grievance officer and the date the response was received (October 9, 2012) was entered into the offender complaint tracking database.

Based on the evidence outlined above, I find that Taylor completed the second step of the grievance procedure and reject the suggestion by Defendants that Taylor abandoned his grievance after the first step of the grievance procedure. The question of whether Taylor completed the third step of the grievance procedure is a closer question which the Court will address next.

### D. THE EVIDENCE DEMONSTRATED TAYLOR COMPLETED STEP THREE OF THE GRIEVANCE PROCEDURE.

The evidence established that in the final step of the grievance procedure, a complainant will receive a grievance appeal form from the grievance officer if the complainant marks "appeal" on the grievance form. The appeal form must be returned to the grievance officer within 7 calendar days, or the appeal will be considered abandoned. Once received, the date of receipt by the grievance office will be entered into the system. The grievance officer will refer the appeal to the appropriate division director (or designee) and enter the "to central office" date in the system.

Upon receipt of an appeal by the central office, the "received in central office" date will be entered into the system, and the appeal will be reviewed to determine if additional action is necessary. The division director will respond to the appeal within 100 calendar days of receipt, and the designated central office staff will enter the action, outcome, outcome date, and "return to institution" date in the system, then return the grievance file to the institution. Upon return, the grievance officer will enter the "received in institution date," and the complainant reviews the response in the presence of the grievance officer (or designee), signs and dates the form. If the complainant refuses to sign the form, the refusal will be noted in the signature section of the appeal form and the complaint will be considered exhausted. The grievance officer must enter the complainant's response and date in the system, provide a copy of the grievance appeal form and attachments (up to 6 pages), and retain the original grievance appeal form and all investigative materials in the individual grievance file. Once the appeal response is received, the complainant is considered to have exhausted the grievance process.

In this case, there was conflicting evidence regarding whether Taylor did or did not initiate the Grievance Appeal process. As set out above, Defendants' theory, as articulated by Ms. Price, is that Taylor refused to sign or return the grievance form and, thus, abandoned his grievance after

step one of the grievance procedure. However, as set out above, this theory was refuted by other evidence including the printout summary from PCC's offender complaint tracking database which established that Taylor, in fact, submitted a grievance in July 2012. *See* Pltf. Exh. 4. Defendants contend that even if Taylor filed a grievance in July 2012, the printout summary from PCC's offender complaint tracking database establishes that Taylor "abandoned" his grievance as of 10/31/2012. However, Ms. Price admitted that she did not check the facility's offender complaint tracking database prior to giving her testimony and she could not say whether there were any other document summaries pertaining to Taylor's complaint in the database.

Also troubling was Ms. Price's testimony that Taylor's original grievance form was not contained in the facility's grievance file and the grievance officer noted Taylor's abandonment of the grievance in a handwritten note on the proposed grievance denial form. The evidence presented makes clear that the grievance procedure contemplated that the facility would retain an original copy of the grievance form and, when a complainant refuses to sign a grievance form—as Defendants argue occurred here—the grievance officer must notate the complainant's refusal in the signature section of the grievance form itself and retain that form for recordkeeping. Defendants' suggestion that Taylor retained and refused to return the facility's sole copy of the grievance form, if true, means the grievance officer failed to follow the facility's grievance procedure. In sum, the evidence presented by Defendants raises more questions than answers and does not demonstrate that it is more likely than not that Taylor abandoned his grievance before completing the last step of the grievance procedure.

In contrast to the muddled evidence presented by Defendants, Taylor testified, quite credibly, that after his grievance was denied, he indicated on the facility's copy of the grievance form that he was appealing the denial of his grievance and returned the form within seven days to

Robert Savage, PCC's grievance officer. Taylor testified he later received a response from Ms. Patricia Cornell, the zone director for PCC, denying his appeal. This testimony was bolstered by other evidence of record including evidence that Taylor was very familiar with the grievance procedure at PCC and was well-versed about the need to exhaust his administrative remedies to maintain an action in federal court. Taylor credibly testified that before filing the grievance at issue in this case, he had worked as a law clerk in the facility's law library; had himself filed grievances and other lawsuits as an inmate; and had assisted other inmates in navigating the facility's grievance procedure.

The "Inmate Copy" of the grievance Taylor produced at the hearing lends further support to Taylor's testimony that he intended to see the grievance procedure through to the final stage. Indeed, on the face of the grievance form, Taylor expressed skepticism that he would receive any relief from the facility and asked the facility to "continue" to the next stage of the process. Given Taylor's familiarity with the process and his prior use of the administrative remedies process to gain access to the courts, it is difficult to believe that Taylor would have intentionally refused to return the grievance form and thereby thwart his ability to access the courts.

Finally, although Taylor provided a plausible explanation for why he did not have copies of the Grievance Appeal form and other step-three documents, Defendants have failed to offer any plausible reason as to why the facility failed to retain Taylor's original grievance form and other grievance related documents. Specifically, Taylor testified that he kept copies of the IRR, grievance, and grievance appeal and the responses he received at each step before filing this action. However, Taylor testified that his copies of the documentation in connection with his grievance and grievance appeal were confiscated by correctional officers who searched his cell on June 23, 2013, 17 days after his first lawsuit regarding the same underlying circumstances of this case.

Taylor's testimony is partially supported by filings in his prior lawsuit before the Honorable Carol E. Jackson (Ret.) which indicated that Taylor filed a grievance with the facility in which he accused prison staff of removing items from his cell.

In sum, after carefully considering the entire record, I find the evidence presented is more supportive of Taylor's version of events than the Defendants' version of events including Taylor's suggestion that his effort to take advantage of the grievance process may have been thwarted (intentionally or otherwise) by prison staff who failed to follow the facility's grievance procedures. *See Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (administrative remedies were unavailable where "officials have prevented prisoners from utilizing the procedures" and "when officials themselves have failed to comply with the grievance procedures").

For the foregoing reasons, I find that Defendants have failed to prove that Plaintiff Samuel Taylor failed to exhaust his administrative remedies.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff may proceed to a trial on the merits.

**IT IS FURTHER ORDERED** that pursuant to this Court's Order dated September 2, 2021, this case is set for a **Jury Trial** on **October 18, 2021 at 9 a.m.** and a **Final Pretrial Conference** on **October 15, 2021, at 1:30 p.m.** in Courtroom 13 South.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of September, 2021.